## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| **DUANE HILL** | |
| *Plaintiff*, | |
| **v.** | **Case No.:** |
| **MARYLAND DEPARTMENT OF STATE POLICE,** | |
| *Defendant*, | **JURY TRIAL DEMANDED** |
| **Serve:** | |
| **Col. Roland L. Butler, Jr., Superintendent, The Maryland Department of State Police 1201 Reisterstown Rd. Pikesville, MD 21208** | |
| **Gov. Wes Moore The Office of Gov. Wes Moore 100 State Circle Annapolis, MD 21401-1925** | |
| **Anthony G. Brown Maryland Attorney General 200 St. Paul Place Baltimore, MD 21202** | |

## <u>COMPLAINT FOR EQUITABLE RELIEF AND COMPENSATORY DAMAGES</u>

COMES NOW, Duane Hill, Plaintiff, (hereinafter "Plaintiff") by and through

undersigned counsel, and complains against Defendant, Maryland Department of State Police,

(hereinafter "Defendant" or "MDSP") and in support thereof states as follows:

## **INTRODUCTION**

1.      Discrimination within police employment environments remains a persistent and deeply troubling issue, undermining both the integrity of law enforcement agencies and the trust of the communities they serve. Despite decades of legal protections and public scrutiny, officers from historically marginalized groups continue to face barriers to advancement, disparate treatment, and exclusion from key opportunities. These challenges are often compounded by institutional cultures that resist change and perpetuate inequities, making it difficult for affected individuals to seek redress without fear of retaliation.

2.      The consequences of such discrimination extend far beyond individual careers, eroding morale within departments and perpetuating systemic disparities in leadership and decision-making. When qualified officers are denied promotions or subjected to hostile work environments based on race or advocacy for equity, the entire agency suffers a loss of talent, perspective, and legitimacy. The following complaint details one such case, highlighting the lived experience of discrimination and retaliation within a state police department, and underscoring the urgent need for accountability and reform.

3.      This is an action for employment discrimination, retaliation, and hostile work environment brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

**JURISDICTION AND VENUE**

4.      This Honorable Court has subject matter jurisdiction over this suit pursuant 28 U.S.C. §§ 1331 and 1343, as this action arises under the laws of the United States, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

5.      Venue is proper in the District of Maryland Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendants transact substantial business in this District, and Defendants maintain employment records related to this action in the District of Maryland.

**EXHAUSTION OF REMEDIES**

6.      Plaintiff has exhausted all of his administrative remedies.

7.      Plaintiff initiated the administrative process by filing a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 531-2024-01691, alleging discrimination, retaliation, and hostile work environment based on race.

8.      The EEOC assumed jurisdiction over Plaintiff's complaint and, on April 16, 2025, issued a Dismissal and Notice of Rights ("Right-to-Sue Letter") to Plaintiff.

9.      Plaintiff received the Notice of Right to Sue on or about April 16, 2025.

10.     Accordingly, Plaintiff timely files this action in accordance with the Notice of Rights, which provides Plaintiff the right to file this Complaint within 90 days of receipt of the Notice.

**NATURE OF THE ACTION**

11.    Plaintiff brings this action to secure protection of rights granted under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to remedy the injury to Plaintiff resulting from Defendant's violation of those statutes.

12.    Plaintiff's damages are significant, including, but not limited to, loss of reputation, loss of wages and benefits due to the denial of promotion, loss of career advancement, emotional distress, and the denial of his constitutional and statutory rights.

13.    This action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to Plaintiff.

**PARTIES**

14.    Plaintiff, Duane Hill, is an African American male who resides in Baltimore County.

15.    At all relevant times, Plaintiff was employed by the Maryland Department of State Police ("MDSP" or "Defendant").

16.    The Maryland Department of State Police ("Defendant" or "MDSP") is an agency of the State of Maryland, with its principal office located at 1201 Reisterstown Road, Pikesville, Maryland 21208. MDSP is an employer within the meaning of Title VII of the Civil Rights Act of 1964 and operates throughout the State of Maryland.

17.    During the relevant period, Defendant employed Plaintiff, Duane Hill.

18.    During the relevant period, Plaintiff was Defendant's employee within the meaning, and entitled to the protections, of Title VII of the Civil Rights Act of 1964.

## **FACTUAL ALLEGATIONS**

1.      Plaintiff Duane Hill is a Black male who has served over 20 years with the Maryland Department of State Police ("MDSP").

2.      Plaintiff joined the MDSP on October 18, 2004, as a member of the 123rd  MDSP Academy Class in Sykesville, Maryland, where he was elected class president by his peers.

3.      After graduation, Plaintiff was assigned to the Forestville Barrack, where he excelled at field training and was a productive trooper.

4.      In 2006, Plaintiff transferred to the Golden Ring Barrack, where he was nominated for Golden Ring Barrack Trooper of the year.

5.      In 2008, Plaintiff was assigned to the Executive Protection Section ("EPS"), where he was promoted twice, ultimately serving as detail leader for the Governor's protective detail.

6.      In 2012, Plaintiff transferred to the Internal Affairs Division ("IAD"), earning the rank of Detective Sergeant and investigating a range of misconduct cases.

7.      In 2015, Plaintiff requested transfer to the Forestville Barrack as First Sergeant to serve as assistant commander and prepare for promotion to Lieutenant; he was transferred there in 2016.

8.      In 2017, Plaintiff was promoted to Lieutenant and assigned to the JFK Memorial Highway Barrack, where he commanded the barrack for one year and managed serious incidents.

9.      Plaintiff subsequently requested and was transferred to the Human Resources Division ("HRD") as assistant commander, seeking broader experience to prepare for senior leadership.

10.     From 2018 to 2021, Plaintiff commanded the Personnel Administration Section in HRD, managing multiple sections and providing guidance on MDSP policies, state and federal employment laws, and crisis management.

11.     In 2021, Plaintiff requested transfer to the IAD, having ranked ninth out of twenty-five on the 2020 captain promotional list.

12.     Plaintiff was officially transferred as assistant commander in September 2021.

13.     On January 12, 2022, Captain Daniel Everett became IAD commander, frequently consulted with the Plaintiff on IAD related decisions. Captain Everett retired on November 1, 2022, after which Plaintiff assumed the role of acting commander for the IAD, covering both commander and assistant commander duties and receiving acting capacity pay for Captain.

14.     Throughout his MDSP career, Plaintiff maintained a clean disciplinary record and consistently received performance appraisals of "Meet" or "Exceeds" expectations. Plaintiff has received no "Unsatisfactory" ratings in his career.

15.     Plaintiff is a longstanding member of the Coalition of Black Maryland State Troopers ("CBMST"), which advocates for equity in discipline, recruitment, promotion of Black troopers, and greater representation in specialized units.

16.     CBMST advocates for the increased recruitment of Black troopers in the Department to address the disproportionate representation of White troopers (Whereas the Black

Population of Maryland is approximately 31.7% of the state population, Black troopers represent

only approximately 12-13% of the Department):

- **January 31, 2023 - Racial Makeup of MDSP:**

| Caucasian Males | 1122 | African American Males | 153 |
|---|---|---|---|
| Caucasian Female | 85 | African American Females | 19 |
| Total | 1207 | Total | 172 |

- **December 31, 2023 - Racial Makeup of MDSP:**

| Caucasian Males | 1105 | African American Males | 152 |
|---|---|---|---|
| Caucasian Female | 83 | African American Females | 20 |
| Total | 1188 | Total | 172 |

17.    CBMST advocates for the promotion of more Black troopers as there are very few

Black troopers in commissioned officer positions:

- **January 31, 2023 - Racial Makeup of Commissioned Officer in MDSP**

| | CM | CF | AAM | AAF | HM | HF | AM | AF |
|---|---|---|---|---|---|---|---|---|
| Colonel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Lieutenant Colonel | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| Major | 6 | 2 | 1 | 0 | 0 | 0 | 0 | 0 |
| Captain | 20 | 2 | 1 | 1 | 1 | 0 | 0 | 0 |
| Lieutenant | 43 | 6 | 1 | 2 | 0 | 0 | 0 | 0 |

- **December 31, 2023 - Racial Makeup of Commissioned Officer in MDSP**

| | CM | CF | AAM | AAF | HM | HF | AM | AF |
|---|---|---|---|---|---|---|---|---|
| Colonel | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| Lieutenant Colonel | 2 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| Major | 7 | 2 | 2 | 1 | 0 | 0 | 0 | 0 |
| Captain | 17 | 2 | 0 | 0 | 1 | 0 | 0 | 0 |
| Lieutenant | 41 | 6 | 1 | 2 | 0 | 0 | 0 | 0 |

18.    On February 23, 2023, Col. Roland Butler (Black, male) was nominated for

Superintendent of the MDSP by Governor Wes Moore. The CBMST, including Plaintiff, opposed

the nomination due to Col. Butler's history with discipline and retaliation related to Black troopers, and on whether Col. Butler was the appropriate candidate to improve the culture within the MDSP and address the discriminatory practices applied to all that the CBMST was concerned about. Col. Butler was not a member of CBMST.

19.     Based on information and belief, as a result of the CBMST's opposition, Col. Butler's nomination was held up in the legislative process.

20.     On March 24, 2023, a meeting was held in Annapolis with Gov. Moore and the CBMST to discuss the issues raised by CBMST about Col. Butler's nomination.

21.     Present at the meeting were the Governor, his Chief of Staff, Fagan Harris, his Secretary of Appointments, Tisha Edwards, and another female attendee from either the Governor or Lt. Governor's staff. Present for CBMST were Lt. Hill, the President of CBMST Anthony Alexander, and two (2) retired MDSP troopers.

22.     Lt. Hill was asked to attend the meeting to listen and provide points to the Governor and his staff as to what would help to make the transition and nomination successful. All CBMST members would be there in solidarity to express CBMST's concerns. The members of CBMST did not expect Col. Butler to be at the meeting as it was billed as a meeting between the Governor, his staff, and CBMST members.

23.     At the start of the meeting, Col. Butler was walked in by a staffer. Plaintiff, and the other CBMST members, felt like there was conduct in question that raised concerns. The CBMST members addressed their concerns about Col. Butler's nomination as outlined above, Governor Moore and his staff gave their reasons for supporting his nomination, and Col. Butler made comments on his own behalf.

24.     Members of the CBMST asked Gov. Moore and his staff to ensure that there would be no retaliation from Col. Butler and the MDSP against the active troopers for attending the meeting and voicing concerns, not only from CBMST members, but from rank and file troopers. Governor Moore and his staff gave their word there would be no retaliation by Col. Butler and the MDSP and they'd be watching his actions closely.

25.     On or about March 31, 2023, Col. Butler was appointed Superintendent of MDSP.

26.     At the time of the meeting, Plaintiff was number three (3) on the 2020 captain promotional list and had been serving as the acting IAD commander since October 1, 2022. The promotional list was set to expire on October 31, 2023.

27.     Lt. Hill fulfilled the duties of Lieutenant and Captain for the IAD unit for over a year. As previously discussed, the prior IAD commander, Capt. Everett, had minimal IAD experience and sought Lt. Hill's assistance to resolve problems and issues. Capt. Everett advocated for Lt. Hill's promotion when he announced his retirement. Previously, there had been a quick replacement when the IAD Captain's position was vacated, but this time, it took approximately a year for that to happen.

28.     Based on information and belief, Col. Butler was not going to promote Lt. Hill because he was at the meeting with Governor Moore and was against his nomination as outlined above. Based on information and belief, Col. Butler was going to let the promotional list Lt. Hill was on expire, thereby making Lt. Hill ineligible for promotion.

29.     Lt. Hill received no negative evaluations from his supervisor, Mr. Hock (Chief of Staff), and was praised for the work he'd been doing covering both positions. Unlike prior IAD Commanders who had frequent communication with the Superintendent, Chief of Staff, and

senior command staff, communication between Lt. Hill and these personnel following the CBMST meeting with the Governor became limited to nearly non-existent. Communication from senior command personnel regarding different types of IAD matters, that would typically involve communication with the IAD commander or assistant commander, began to be conducted primarily with the IAD's civilian administrator.

30.    In September 2023, Plaintiff found himself in a difficult position with regards to whether he should take the captain promotional test. He still held out hope that he would get promoted, so he did not study for the test as he normally would. In addition to that, Plaintiff was still doing the job of two people. Plaintiff decided to take the test, unprepared, and did not pass, and therefore he is not eligible for the rank of captain. This has set his promotional career back three (3) plus years and will also affect his retirement and DROP compensation.

31.    On October 18, 2023, after nearly a year of the IAD commander position being vacant, Captain James DeCourcey (White, male), was appointed commander of the IAD.

32.    Plaintiff believes that the failure to promote him to Captain, and the appointment of Captain DeCourcey as commander of the IAD, were acts of intentional retaliation for his advocacy and participation in the CBMST meeting with the Governor.

33.    Plaintiff alleges that similarly situated employees outside his protected class have been treated more favorably in the promotion process, and that MDSP has engaged in a pattern of race-based discrimination in promotions.

34.    On the 2020 promotional list for captain, out of twenty-five (25) lieutenants on the list, only two (2) were Black/African American candidates, Plaintiff and Kenny Brown.

Plaintiff was ranked ninth on the promotional list for captain. The results of the top nine (9) candidates for promotion were as follows:

       a.      Robert Iman (White/Male) promoted to Captain: June 16, 2021, and stayed in the same division where he served as a Lieutenant. Was promoted again to Major: September 6, 2023;

       b.      Justin Gross (White/Male) promoted to Captain: July 14, 2021, and transferred from the Employment Services Section (ESS) to the Criminal Enforcement Division (CED). There was no Captain's position within the ESS so his transfer out of the unit was to be expected;

       c.      Kenny Brown (Black/Male) promoted to Captain: January 12, 2022, and stayed in the same division where he was a Lieutenant. Was promoted again to Major: September 6, 2023. Maj. Brown is not a member of CBMST nor was he advocating for the changes favored by CBMST;

       d.      Stephen Decerbo (White/Male) promoted to Captain: January 12, 2022 and transferred to another bureau. Was promoted again to Major: September 6, 2023;

       e.      Douglas Reiner (White/Male) promoted to Captain: April 8, 2022, after Plaintiff completed an IAD investigation against him, and was transferred to a position within the Forensic Sciences Division;

       f.      Diane Hansen (White/Female) promoted to Captain: January 12, 2022, and transferred to another bureau;

       g.      Jeffrey Jones (White/Male) not promoted;

       h.      Thomas Quade (White/Male) not promoted;

       i.      Duane Hill (Black/Male) not promoted.

35.    None of the personnel (a-f in ¶ 34) that were promoted, outwardly complained about any issues within the MDSP.

36.    Plaintiff was denied promotion to the position of Captain and IAD commander, despite having served as acting IAD commander since October 1, 2022, and being ranked on the 2020 captain promotional list. Instead, Captain James DeCourcey, a White male, was appointed to the position of IAD Commander. During the relevant period, similarly situated White officers were promoted to commissioned officer positions while Plaintiff and other Black officers were not. Plaintiff alleges that, throughout the promotion process leading up to and including October 2023, MDSP engaged in a pattern of race-based discrimination by treating White employees more favorably than Black employees, as evidenced by statistical underrepresentation of Black troopers in leadership roles and the preferential promotion of White officers over qualified Black candidates, including Plaintiff himself.

37.    Plaintiff further alleges that the "good ole' boy system" and culture of racial suppression within MDSP foster an environment where White officers are promoted and Black officers are not.

38.    Plaintiff's career advancement, retirement, and compensation have been adversely affected by the denial of promotion.

39.    Plaintiff has since suffered continuous mental and emotional anguish due to the discriminatory and retaliatory behavior he has been subjected to by the Defendant.

40.    Plaintiff has been subjected to unwelcome conduct, including denial of promotion and exclusion from communication, which he alleges is based on his race and advocacy for equity.

41.     Plaintiff timely filed a Charge of Discrimination with the EEOC, alleging

discrimination, retaliation, and hostile work environment based on race.

42.     The EEOC issued a Dismissal and Notice of Rights on April 16, 2025, and

Plaintiff now brings this action within the statutory period.

<u>**COUNT I**</u>
**VIOLATION OF TITLE VII - RACE DISCRIMINATION**

43.     Plaintiff re-alleges and incorporates by reference each and every allegation in the

paragraphs above, as if fully set forth herein.

44.     To establish a *prima facie case* of race discrimination under Title VII, Plaintiff

must show: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse

employment action; and (4) that similarly situated employees outside the protected class were

treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Coleman

v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

45.     Plaintiff is a Black male and thus a member of a protected class.

46.     Plaintiff's employment record demonstrates years of satisfactory performance,

including positive appraisals, promotions, and a clean disciplinary record.

47.     Here, Plaintiff suffered an adverse employment action when he was denied

promotion to Captain, despite taking the promotional test and placing favorably in the ranking,

and further where he was serving as acting IAD commander and was not appointed to fulltime

IAD Commander despite having all qualifications for the rank and position.

48.     Statistical evidence and Plaintiff's allegations show that similarly situated White

employees were treated more favorably in the promotion process, as White officers were

promoted while Black officers, including Plaintiff, were not. Additionally, Captain DeCourcey received preferential treatment when he was appointed to commander of the IAD over the Plaintiff.

49.    The underrepresentation of Black troopers in commissioned officer positions, despite their qualifications and advocacy for equity, supports an inference of discriminatory intent.

50.    Defendant may assert that the selection of Captain DeCourcey was based on departmental needs or qualifications. However, Plaintiff was performing the duties of the position for over a year, received no negative evaluations, and was ranked on the promotional list, undermining any legitimate, non-discriminatory justification.

51.    The timing of the denial of promotion, following Plaintiff's advocacy for racial equity and participation in the CBMST meeting, further supports a finding of pretext. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

52.    The "good ole' boy system" and culture of racial suppression within MDSP, as alleged and supported by statistical data, provide additional evidence of discriminatory motive.

53.    Accordingly, Plaintiff has established a prima facie case of race discrimination, and the evidence supports a finding that Defendant's stated reasons for the adverse action are pretextual.

## <u>COUNT II</u>
### VIOLATION OF TITLE VII – HOSTILE WORK ENVIORNMENT

54.    Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

55.     To establish a hostile work environment claim under Title VII, Plaintiff must show: (1) he belongs to a statutorily protected class; (2) he was subjected to harassment in the form of unwelcome verbal or nonverbal conduct; (3) the harassment complained of was based on his statutorily protected class; (4) the harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the employer. *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993).

56.     Plaintiff, Duane Hill, is a Black male and a longstanding member of the Coalition of Black Maryland State Troopers ("CBMST"), who has served nearly 20 years with the Maryland Department of State Police ("MDSP"). Throughout his career, Plaintiff has advocated for equity in discipline, recruitment, and promotion of Black troopers, and greater representation in specialized units.

57.     Plaintiff was subjected to unwelcome conduct, including but not limited to: denial of promotion to Captain despite serving as acting IAD commander and meeting all qualifications for the rank; exclusion from key communications and decision-making processes following his advocacy for racial equity; and a pattern of disparate treatment in comparison to similarly situated White officers, who were promoted and included in leadership opportunities.

58.     The conduct described above was based on Plaintiff's race and his advocacy for the rights of Black troopers. The timing and context of the adverse actions, including the denial of promotion shortly after Plaintiff's participation in a meeting with the Governor and senior MDSP leadership to address concerns about discriminatory practices, further demonstrate that the harassment was motivated by Plaintiff's protected status and activities.

59.     The actions and conduct by Defendant and its agents were severe and pervasive, resulting in the loss of advancement, compensation, and creating an abusive, isolating, and intimidating work environment for Plaintiff. The ongoing nature of the conduct, the exclusion from communication, and the denial of career opportunities would have detrimentally affected a reasonable person of the same race and position as Plaintiff.

60.     Defendant knew or should have known of the harassment, discrimination, and disparate treatment described herein. Defendant failed to address the problems and further failed to implement effective and appropriate measures to stop these acts. By failing to conduct a prompt and thorough investigation of Plaintiff's allegations of discrimination, failing to redress the discrimination, and by consciously failing to protect Plaintiff from discrimination within the Department, Defendant exacerbated the hostile work environment suffered by Plaintiff and intentionally discriminated against Plaintiff in violation of Title VII.

61.     Defendant's actions, and failure to act, amounted to discrimination under Title VII and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Equal Protection Clause abrogates the states' Eleventh Amendment sovereign immunity, and Title VII provides an enforcement remedy for equal protection violations of state employees through Section 5 of the Fourteenth Amendment.

62.     As a direct result of Defendant's unlawful acts, Plaintiff has suffered damages, including but not limited to lost wages, loss of reputation, loss of career advancement, emotional distress, and mental anguish.

## <u>COUNT III</u>
## VIOLATION OF TITLE VII – RETALIATION

63.     Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

64.     Title VII of the Civil Rights Act prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin, and from retaliating against employees for engaging in activity protected by Title VII, 42 U.S.C. § 2000e–2(a)(1), § 2000e–3(a). An employer may not create or condone a hostile or abusive work environment that is discriminatory or retaliatory.

65.     Plaintiff engaged in protected activity by advocating for the rights of Black troopers, raising concerns about discriminatory practices within the Maryland Department of State Police ("MDSP"), and participating in the March 24, 2023 meeting with Governor Moore, senior state officials, and MDSP leadership to address issues of race discrimination and equity in promotions and discipline.

66.     Defendant, including Plaintiff's supervisors and senior command staff, knew of Plaintiff's engagement in protected activity prior to the adverse actions, as Plaintiff's advocacy and participation in the CBMST meeting were public and directly communicated to MDSP leadership.

67.     Soon after Plaintiff's protected activity, Plaintiff was subjected to ongoing adverse employment actions, including but not limited to: denial of promotion to Captain despite serving as acting IAD commander and meeting all qualifications for the rank; exclusion from key communications and decision-making processes; and disparate treatment in comparison to similarly situated White officers who were promoted and included in leadership opportunities.

68.     The temporal proximity between Plaintiff's protected activity in March 2023 and the denial of promotion in October 2023, as well as the immediate change in communication

patterns and exclusion from leadership, supports a causal connection between Plaintiff's protected activity and the adverse actions taken against him.

69.     Similarly situated employees who did not engage in protected activity—namely, White officers and those who did not advocate for equity—were not subjected to the same, similar, or any adverse treatment as Plaintiff. These comparators were promoted, retained in leadership roles, and included in key communications and opportunities. Furthermore, Captain James DeCourcey (White, male), was appointed commander of the IAD, despite the fact that Plaintiff had been serving in an acting capacity for over a year.

70.     The reasons proffered by Defendant for its adverse actions are pretextual, as Plaintiff was fully qualified for promotion, had performed the duties of Captain for over a year without negative evaluations, and was ranked on the promotional list. The pattern of adverse actions following Plaintiff's protected activity, and the lack of legitimate, non-discriminatory justification, further support a finding of retaliatory motive.

71.     Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his participation in protected activity and opposition to Defendant's discriminatory conduct.

72.     Defendant is directly liable for the discriminatory and retaliatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of respondeat superior.

73.     As a direct and proximate result of Defendant's conduct alleged throughout this Complaint, Plaintiff has suffered and continues to suffer harm, injury, and monetary damages; including, but not limited to, past and future loss of income, benefits, career opportunities,

emotional distress, and reputational harm; and is entitled to all available legal and equitable remedies.

74.    Plaintiff was humiliated, isolated, and made to endure significant pain and suffering, and his injury is permanent in nature. Defendant's retaliatory treatment and actions are ongoing.

75.    Defendant's unlawful conduct has created a climate of fear and isolation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

76.    The Maryland Department of State Police must comply with Title VII, and by and through their conduct, have violated the law.

<u>COUNT IV</u>
**VIOLATION OF MARYLAND FAIR EMPLOYMENT PRACTICES ACT ("FEPA")**

77.    Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

78.    The Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-601 et seq., prohibits employers from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, age, national origin, marital status, sexual orientation, gender identity, genetic information, or disability by employers with more than 15 employees.

79.    At all relevant times, Defendant, Maryland Department of State Police ("MDSP"), was an employer within the meaning of FEPA, employing more than fifteen (15) employees, and Plaintiff was an employee entitled to the protections of FEPA.

80.    Under FEPA, an employer is liable for discrimination, harassment, and retaliation if the person responsible for the adverse action can make or recommend employment decisions

(e.g., hiring, firing, promotion, demotion, reassignment) or directs, supervises, or evaluates the work activities of the employee, or if the employer's own negligence leads to or enables discrimination or harassment. Md. Code Ann., State Gov't § 20-611; *Alexander v. Marriott Int'l, Inc.*, 875 F.3d 720, 727 (4th Cir. 2017).

81.     Plaintiff is a Black male who has served with MDSP for over twenty (20) years, consistently receiving positive performance evaluations and maintaining a clean disciplinary record.

82.     Plaintiff suffered adverse employment actions, including but not limited to: denial of promotion to Captain; denial of promotion to IAD commander despite serving as acting IAD commander and meeting all qualifications for the position; exclusion from key communications and decision-making processes; and disparate treatment in comparison to similarly situated White officers who were promoted and included in leadership opportunities.

83.     Similarly situated employees outside Plaintiff's protected class—namely, White officers—were treated more favorably in the promotion process and were not subjected to the same adverse treatment as Plaintiff.

84.     The conduct described above was based on Plaintiff's race and his advocacy for equity within MDSP, and constitutes discrimination and retaliation in violation of FEPA.

85.     Defendant's actions and omissions were intentional, deliberate, willful, malicious, reckless, and in callous disregard of Plaintiff's rights under FEPA.

86.     Defendant is directly liable for the discriminatory and retaliatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *respondeat superior*.

87.     Plaintiff was humiliated, isolated, and made to endure significant pain and suffering, and his injury is permanent in nature. Defendant's discriminatory and retaliatory treatment and actions are ongoing.

88.     The Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race.

89.     Under the 2016 revised standard of LGTCA § 5-304(e), this Court has found that an EEOC Charge is sufficient to satisfy the notice requirement of the LGTCA because "it provided the County with 'actual or constructive notice' of 'the claimant's injury' or 'the defect of circumstances giving rise to the claimant's injury' within one year of that injury." *See Hine v. Prince George's Cty.*, 2021 U.S. Dist. LEXIS 236854, at *10–11 (D. Md.); see also Md. Code Ann., Cts. & Jud. Proc. § 5-304(e) (codifying the concept of substantial compliance by stating that "this section does not apply if, within 1 year after the injury, the defendant local government has actual or constructive notice of: (1) the claimant's injury; or (2) the defect of circumstances giving rise to the claimant's injury"). In the present case, the earliest events giving rise to Plaintiff's claims occurred on or about October 1, 2022, and Plaintiff filed his EEOC Charge detailing his injury at the hands of Defendant in 2024—well within the one-year notice requirement of the LGTCA. As such, Plaintiff did properly bring his claim under FEPA as an employee and complied with the Local Government Tort Claims Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Duane Hill, respectfully prays that this Court grant him the following relief:

a.  Enter a declaratory judgment that Defendant's conduct, as alleged herein, violated FEPA by engaging in unlawful discrimination, retaliation, and the creation of a hostile work environment on the basis of race;

b.  Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory, and retaliatory conduct described herein and to prevent similar occurrences in the future, including but not limited to the implementation of effective anti-discrimination policies, training, and oversight;

c.  Reinstate Plaintiff to the position of Captain or a comparable position with all rights, privileges, and benefits, or, in the alternative, award Plaintiff front pay in lieu of reinstatement;

d.  Award Plaintiff back pay and all lost wages, salary, benefits, and other compensation denied or lost as a result of Defendant's unlawful conduct, including but not limited to lost retirement and pension benefits;

e.  Award Plaintiff compensatory damages in an amount to be determined at trial for emotional distress, mental anguish, reputational harm, and other non-economic injuries suffered as a result of Defendant's conduct;

f.  Award Plaintiff punitive damages as permitted by law for Defendant's intentional, willful, and reckless disregard of Plaintiff's rights under FEPA;

g.  Award pre-judgment and post-judgment interest as allowed by law;

h.  Award Plaintiff reasonable attorneys' fees and costs incurred in this action, pursuant to Md. Code Ann., State Gov't § 20-1202 and other applicable law;

i.  Grant such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable herein.

Dated: July 14, 2025

Respectfully submitted,

By: /s/ Dionna Maria Lewis
Dionna Maria Lewis, Esq.
Bar No. 19486
District Legal Group, PLLC
700 Pennsylvania Ave SE, Suite 2098
Washington, D.C.20003
Tel. (202) 486-3478
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiff Duane Hill*